BENJAMIN B. WAGNER
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:13-MC-00046-KJM-KJN |
| Plaintiff, | CONSENT JUDGMENT OF FORFEITURE |
| v. | |
| APPROXIMATELY $8,495.00.00 IN U.S. CURRENCY, and | |
| APPROXIMATELY $9,000.00 IN U.S. CURRENCY, | |
| Defendants. | |

Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

1.   On November 21, 2012, agents with the Drug Enforcement Administration ("DEA") seized Approximately $8,495.00 in U.S. Currency and Approximately $9,000.00 in U.S. Currency (hereafter "defendant currency") from Phorn Tem ("Tem") and Lochien Saecho ("Saecho") at the Sacramento International Airport.  The DEA commenced administrative forfeiture proceedings, sending direct notice to all known potential claimants and publishing notice to all others.  On or about February 11, 2013, the DEA received claims from Tem and Saecho asserting an ownership interest in the defendant currency.

2.   The United States represents that it could show at a forfeiture trial that on

1

1  or about November 21, 2012, agents with the DEA noticed Saecho exit the jet way and
2  then stop in the terminal while looking back toward the jet way.  One of the agents
3  introduced himself to Saecho as law enforcement and asked if he could speak with him.
4  The agent asked Saecho about his travel plans and Saecho stated that he had been in
5  Boston for the last three to four days visiting family.  While the agent was talking with
6  Saecho, the agent saw Tem walk hesitatingly past the two of them while observing their
7  conversation.  Tem proceeded to walk by, not stopping or acknowledging any association
8  with Saecho.  The agent asked Saecho if he could search his checked bag and Saecho
9  consented.

10     3.     The United States could further show at trial that during this time, other
11  DEA agents had approached Tem, identified themselves as law enforcement, and Tem
12  agreed to speak with them.  When asked about his travel plans, Tem said that he lived in
13  California and had been in Boston visiting family for three days.  The agents asked if he
14  was traveling alone and Tem stated that he was.  When asked about his luggage, Tem
15  said he was traveling with two checked bags.  The agents asked if he was carrying any
16  weapons, liquids, or contraband.  Tem responded that the only thing he had was
17  approximately $8,500.00 in his checked luggage.  Tem granted permission for the agents
18  to search him and his luggage.  The agents, Tem, and Saecho met at the baggage
19  carousel.  Both Tem and Saecho continued to claim that they were traveling alone,
20  however, when agents presented the luggage to Tem and Saecho, Saecho took the bag
21  with Tem's name on it.  Agents reviewed the tags on each bag.  One of the bags had two
22  tags on it, one with the same Saecho and one with the name Tem.  Agents asked again if
23  the two were traveling together and they responded that they were traveling together,
24  but separate.  Tem said they had flown to Boston together, but in Boston went their
25  separate ways.

26     4.     The United States could further show at trial that a search of the luggage
27  revealed the defendant Approximately $8,495.00 in U.S. Currency in the pocket of a pair
28  of pants in the luggage belonging to Tem and the defendant Approximately $9,000.00 in

2

U.S. Currency in the pocket of a pair of pants in the luggage belonging to Saecho. The agents asked Tem where the money in his pants came from and he stated that it was his savings from odd jobs that he performed. Tem said he didn't trust banks, so he carried his cash with him.

5. The United States could further show at trial that agents had previously asked Saecho where he had been staying in Boston and he had replied that he had stayed with family. When agents asked a second time where he stayed in Boston, Saecho changed his story and said that he had stayed in a hotel. A Days Inn hotel room card was found in the same pants pocket as the currency in his luggage. When asked the source of the $9,000.00, Saecho stated that it was proceeds from his business of buying and selling cars, and that he was intending to purchase an Acura; however, he could not tell agents the name of the seller or the place where he was going to buy the vehicle. When agents asked Saecho if he thought this was an unusual way to carry money, Saecho stated "How else am I supposed to carry it?" The agent said that most people keep their money in a bank account. Saecho said he did not "believe in banks."

6. The United States could further show at trial that a drug dog positively alerted to the presence of the odor of narcotics on both amounts of the defendant currency.

7. The United States could further show at a forfeiture trial that the defendant currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

8. Without admitting the truth of the factual assertions contained above, Phorn Tem and Lochien Saecho specifically denying the same, and for the purpose of reaching an amicable resolution and compromise of this matter, Phorn Tem and Lochien Saecho agree that an adequate factual basis exists to support forfeiture of the defendant currency. Phorn Tem and Lochien Saecho hereby acknowledge that they are the sole owners of the defendant currency, and that no other person or entity has any legitimate claim of interest therein. Should any person or entity institute any kind of claim or action against the government with regard to its forfeiture of the defendant currency,

Phorn Tem and Lochien Saecho shall hold harmless and indemnify the United States, as set forth below.

9. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355, as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

10. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in which the defendant currency was seized.

11. The parties herein desire to settle this matter pursuant to the terms of a duly executed Stipulation for Consent Judgment of Forfeiture.

Based upon the above findings, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

12. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered into by and between the parties.

13. Upon entry of this Consent Judgment of Forfeiture, $6,995.00 of the $8,495.00 in U.S. Currency, and $7,500.00 of the $9,000.00 in U.S. Currency, together with any interest that may have accrued on the total amounts seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

14. Upon entry of this Consent Judgment of Forfeiture, but no later than 60 days thereafter, $1,500.00 of the $8,495.00 in U.S. Currency shall be returned to potential claimant Phorn Tem and $1,500.00 of the $9,000.00 in U.S. Currency shall be returned to Lochien Saecho through their attorney Mark Reichel.

15. The United States of America and its servants, agents, and employees and all other public entities, their servants, agents, and employees, are released from any and all liability arising out of or in any way connected with the seizure or forfeiture of the defendant currency.  This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure or forfeiture, as well as to those now known or disclosed.  The parties waived the provisions of California Civil Code § 1542.

16. Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court finds that there was reasonable cause for the seizure of the defendant currency and a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 shall be entered accordingly.

17. No portion of the stipulated settlement, including statements or admissions made therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(4) of the Federal Rules of Evidence.

18. All parties will bear their own costs and attorney's fees.

IT IS SO ORDERED.

DATED: June 6, 2013

_____
UNITED STATES DISTRICT JUDGE

### CERTIFICATE OF REASONABLE CAUSE

Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court enters this Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was reasonable cause for the seizure of the above-described defendant currency.

DATED: June 6, 2013

_____
UNITED STATES DISTRICT JUDGE